IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| QUINNETTA SIMMONS | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CASE NO. |
| VS. | ) |
| | ) HON. |
| URBAN ALLIANCE, | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |
| | ) |
| | ) |

## **COMPLAINT**

PLAINTIFF, Quinnetta Simmons, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against DEFENDANT Urban Alliance.

## **JURY DEMAND**

COMES NOW PLAINTIFF, Quinnetta Simmons, and hereby makes his demand for trial by jury.

## **JURISDICTION**

1.     Plaintiff Quinnetta Simmons was a resident of Kalamazoo County in the State of Michigan at all times relevant to this action.

2.     Defendant is a domestic limited liability company, with a continuous and systematic place of business located at 1009 E. Stockbridge Ave., Kalamazoo, MI 49001.

3. All relevant actions giving rise to this complaint took place in Kalamazoo County in the State of Michigan.

1

4.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

5.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

6.      Venue is proper in the Western District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

7.      On or around May 20, 2019, Defendant, hired Plaintiff Quinnetta Simmons.

8.      Plaintiff was one of the only African American women hired by Defendant which was made up primarily of older, white males.

9.      When Plaintiff was hired, Defendant claimed it did not have the budget to pay her what she was worth.

10.     Approximately two weeks after being hired, Defendant found room in the budget to award Plaintiff a raise from $40,000 to $43,000.

11.     Almost immediately after being hired, Plaintiff became victim to the first of several sexual advances from her direct Supervisor, Brian Parsons.

12.     Parsons would make inappropriate comments to Plaintiff such as, "you look smoking hot in that dress."

13.     Parsons also gifted Plaintiff a card and stated that he wanted to invest in her marriage.

2

14.     Parsons furthered his advances by sitting unnecessarily close to Plaintiff during meetings.

15.     Plaintiff reported the sexual harassment to her CEO and the HR Director, Kelly Ball.

16.     Plaintiff stated that she could no longer work with Parsons due to the sexual harassment.

17.     After reporting and refusing to work with Parsons, Luke Kujacvnski became Plaintiff's direct supervisor, on or around November 21, 2019.

18.     During the Fall of 2019, Defendant received complaints from staff members regarding yelling, gaslighting, and mental abuse from management.

19.     On or around January 1, 2020, Plaintiff received another pay raise.

20.     On or around March 3, 2020, Plaintiff was instructed that her new direct supervisor would be Chris Pompey.

21.     On or around May 27, 2020, Plaintiff spoke out about microaggressions she was experiencing while working for Defendant.

22.     Less than a month later, on or around June, 15, 2020, Plaintiff was demoted form "Manager" to "Career Coach," losing her supervisory role.

23.     Thereafter, Plaintiff witnessed a very offensive Facebook post from Parsons dressed up in "Black face," wearing dreadlocks.

24.     After Plaintiff reported the post to HR, Defendant was told she was being hypersensitive about the post because it was "just a joke"; however, Parsons later removed the post.

3

25.     Defendant told Plaintiff that her employment was no longer a good "culture fit."

26.     Sometime in August 2020, Plaintiff's hours were reduced from full-time employee to part-time employee.

27.      Due to the demotion. Plaintiff lost her benefits that she was receiving as a full-time employee.

28.     Plaintiff's pay rate was decreased to $37,000/ year.

29.     Plaintiff was the only one in the organization who was switched to part-time, forcing Ms. Simmons to seek other opportunities to support herself, resulting in her constructive discharge.

30.     Plaintiff requests relief as described in the Prayer for Relief below.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

31.     Plaintiff exhausted her administrative remedies and satisfied this jurisdictional prerequisite.

32.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission regarding Defendant's discriminatory conduct: Charge No. 471-2021-01511.

33.     The Equal Employment Opportunity Commission issued a Notice of to Sue letter on June 6, 2022.

## COUNT I

## GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF TITLE VII

34.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

35.     At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

36.     Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to sexually harass an employee or discriminate against said employee on the basis of gender.

37.     A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

38.     Plaintiff is a woman and a member of a protected class.

39.     Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.

40.     Brian Parsons is a male who sexually harassed Plaintiff.

41.      The communication and conduct from Parsons was unwelcomed.

42.     The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

43.     Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

44.     As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

45.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II

### GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

46.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

47.     At all material times, Defendant was an employer covered by, and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), as amended.

48.     Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to sexually harass or discriminate against an employee.

49.     A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

50.     Plaintiff is a woman and a member of a protected class.

51.     Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.

52.     Brian Parsons is a male who sexually harassed Plaintiff.

53.      The communication and conduct from Parsons was unwelcomed.

54.     The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

55.     Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

6

56.     As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

57.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("TITLE VII")**

58.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

59.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

60.     Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race.

61.     Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to Title VII.

62.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

63.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

64.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

7

65.     As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

66.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

67.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")**

68.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

69.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

70.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color.

71.     Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

72.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

73.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

8

74.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

75.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

76.     Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT V

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("TITLE VII") (SEXUAL HARASSMENT)**

77.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

78.     At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of Title VII.

79.     Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to retaliate against an employee for engaging in protected activity.

80.     A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

81.     Plaintiff engaged in protected activity when she took the following actions, including but not limited to: reporting to Defendant sexual harassment by her supervisor.

82.     Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were the individuals to whom Plaintiff reported the harassment and discrimination.

83.     Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to requiring her to return to work despite the mistreatment she was continually experiencing, demoting her, and eventually constructively terminating her.

84.     But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

85.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

86.     Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication, and Defendant failed to remedy the unwelcomed conduct or communication.

87.     As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

88.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

89.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI

## RETALIATION IN VIOLATION OF THE ELCRA (SEXUAL HARASSMENT)

90.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

91.     At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

92.    Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

93.    A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

94.    Plaintiff engaged in protected activity when he took the following actions including but not limited to reporting to Defendant sexual harassment by her supervisor.

95.    Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were the individuals to whom Plaintiff reported the harassment and discrimination.

96.    After Plaintiff engaged in protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions against culminating in Plaintiff's constructive termination.

97.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

98.    Plaintiff notified Defendant's agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

99.    As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

100.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

101.    Plaintiff requests relief as described in the Prayer for Relief below.

11

## COUNT VII

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("TITLE VII") (RACIAL DISCRIMINATION AND HARASSMENT)**

1. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

2. At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of Title VII.

3. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to retaliate against an employee for engaging in protected activity.

4. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

5. Plaintiff engaged in protected activity when she took the following actions, including but not limited to: reporting to Defendant episodes of racial discrimination/microaggressions that she was experiencing at work, including a social media post of her supervisor in Black face.

6. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were the individuals to whom Plaintiff reported the harassment and discrimination.

7. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to requiring her to return to work despite the mistreatment she was continually experiencing, demoting her, and eventually constructively terminating her.

8.      But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

9.      Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

10.     Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication, and Defendant failed to remedy the unwelcomed conduct or communication.

11.     As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

12.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

13.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII

## RETALIATION IN VIOLATION OF THE ELCRA (RACIAL DISCRIMINATION AND HARASSMENT)

1.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

2.      At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of the ELCRA

3.      Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to retaliate against an employee for engaging in protected activity.

4.      A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

5.      Plaintiff engaged in protected activity when she took the following actions, including but not limited to: reporting to Defendant episodes of racial discrimination/microaggressions that she was experiencing at work, including a social media post of her supervisor in Black face.

6.      Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were the individuals to whom Plaintiff reported the harassment and discrimination.

7.      Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to requiring her to return to work despite the mistreatment she was continually experiencing, demoting her, and eventually constructively terminating her.

8.      But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

9.      Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

10.     Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication, and Defendant failed to remedy the unwelcomed conduct or communication.

11.     As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

12.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

13.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IX

**HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA**

14.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

15.     At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the ELCRA.

16.     A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

17.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

18.     Defendant intentionally created an environment, more fully laid out in the statement of facts and herein the complaint, in which Plaintiff was subjected to harassment.

19.     Defendant knew specifically of Plaintiff's mistreatment because she made a complaint.

20.     This type of conduct was intended to, and did interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

21.     Defendant's hostile work environment was culminated intentionally, with malice, or with reckless indifference to Plaintiff's rights.

22.     But for Defendant's illegal discrimination and retaliation, and the environment that that discrimination and retaliation created, Plaintiff would not have been damaged nor constructively terminated.

23.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

24.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

25.     Plaintiff requests relief as described in the Prayer for Relief below.

## <u>RELIEF REQUESTED</u>

PLAINTIFF Quinnetta Simmons respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.


Dated:  September 4, 2022                 Respectfully Submitted,

                                          /s/ Carla D. Aikens _____
                                          Carla D. Aikens (P69530)
                                          Rejanaé M. Brooks (P85701)
                                          CARLA D. AIKENS, P.L.C.
                                          *Attorneys for Plaintiff*
                                          615 Griswold Ste. 709
                                          Detroit, MI 48226
                                          carla@aikenslawfirm.com
                                          rejanae@aikenslawfirm.com